SOUTHWESTERN BELL TELEPHONE
COMPANY, Appellant,

v.

Von NASH, Appellee.

No. 12983.

Court of Civil Appeals of Texas,
Austin.

Aug. 22, 1979.

Rehearing Denied Sept. 14, 1979.

Jerry R. Tucker, Sr., San Antonio, for appellant.

Lloyd Doggett, Doggett & Jacks, Austin, for appellee.

PHILLIPS, Chief Justice.

This was an action filed under the Texas Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Comm.Code Ann.

§ 17.41 *et seq.* (Supp.1978), wherein appellee sought trebled compensatory damages and attorney's fees.

Appellant filed a plea to the jurisdiction and a motion for summary judgment based upon its compliance with the Texas Public Utility Regulatory Act, Article 1446c, V.C.S. (Supp.1978). The trial court denied both of these pleas and entered judgment against appellant for $5,000 actual damages, trebled, and attorney's fees of $15,000.

Appellant duly perfected its appeal to this Court.

We affirm.

The parties hereto have stipulated appellant represented that it would provide appellee with white and yellow page listings under three different names in the Austin telephone directory, and that it failed to do so. Appellant represented to appellee that it would provide operator intercept service by which callers would be referred by coded message to a new number until certain telephone installations were accomplished and it failed to do so. Appellant further represented to appellee that it would provide callers to "information" or directory assistance with appellee's telephone number during a certain period of time and it failed to do so. Appellant impliedly warranted to appellee that these directory listings, directory information, and operator intercept services would be performed in a good and workmanlike manner and they were not so provided, proximately causing appellee's damages. By representing to appellee that appellant's services were of a particular standard, quality and grade, when they were not, and that said services had particular characteristics, uses, or benefits that they did not have, appellant was the producing and proximate cause of damages to appellee. The damages to appellee which were proximately caused by appellant's false, misleading and deceptive practices and appellant's breach of the implied warranty are in the amount of $5,000.

## I.

At the outset appellee contends that inasmuch as a part of appellant's appeal is based upon certain tariffs and the rules of the Public Utility Commission, and inasmuch as these tariffs and regulations were never offered into evidence, that they are not before the Court. According to appellee, neither this Court nor the trial court can take judicial notice of them. *Young v. McGill,* 473 S.W.2d 672 (Tex.Civ.App.1971, no writ); *Byrd . v. Trevino-Bermea,* 366 S.W.2d 632 (Tex.Civ.App.1963, no writ); McCormick and Ray, *Texas Law of Evidence* § 179 at 196 (2d ed. 1956).

In short, appellee contends that appellant has presented a record, the only relevant parts of which give this Court no indication of whether appellant's conduct, made the basis for this action, comes within the jurisdiction of the Public Utility Commission, whether the agency has rules applicable to appellant's deceptive conduct, or whether tariffs have been promulgated to limit appellant's liability for damages produced by its deception.

The federal courts take judicial notice of tariffs in a case such as this, *Carter v. American Telephone & Telegraph Co.,* 365 F.2d 486 (5th Cir. 1966), and the Texas courts also take judicial notice of federal rules and regulations. McCormick and Ray, *Texas Law of Evidence* § 172 and 184 (2d ed. 1956). The only rationale for our courts to refuse to take judicial notice of rules and regulations such as the tariffs in question must have been that in Texas we have no official reports of these rules and regulations to which we can turn, thus making it incumbent upon the moving party to incorporate such matters into the record if his case, or any part thereof, is dependent thereon.

The cases holding that the courts in Texas are unable to take judicial notice of matters such as the tariffs in question were decided before the Administrative Procedure and Texas Register Act, Tex.Rev.Civ. Stat.Ann. art. 6252–13a (Supp.1978). These tariffs are now published by the Public Utility Commission in its substantive rules and are presently in the Texas Register beginning in Volume 48 at page 1651 and

are found throughout subsequent issues as the rules were adopted and amended.

■ Therefore there is no sound reason why Texas should not follow the federal rule in this regard and take judicial notice of the tariffs. We hold that this Court will take judicial notice, in appropriate cases, of the acts of administrative bodies officially published in the Texas Register.

## II.

The next two questions for decision are whether the trial court erred in refusing appellant's defense with respect to its published tariffs and whether the court erred in failing to apply the doctrine of primary jurisdiction over regulated activities under the Public Utility Regulatory Act.

Appellant maintains that it has filed tariffs with the Texas Public Utility Commission stating that the amount of compensation that can be paid to its customers for damages as a result of errors and omissions in listings in the telephone directory, or interruption of service, cannot exceed the rate charged for such service for the period of the directory or for the period of interruption of service. As stated above, payment according to this tariff was made to appellee.

Appellant contends that to allow appellee to receive more than the payment already made to her under the tariff would be tantamount to giving her an unreasonable preference or advantage by furnishing her services at a rate that is less than that allowed by its lawfully filed tariffs, and that this limitation of liability is part of the established rate structure and the charges made for business service and is not subject to challenge on the basis of negligence or representations in an individual case.

Appellant then contends that these tariffs carry the dignity of statutory law, citing *Israel v. Metropolitan Dade County, Florida,* 431 F.2d 925 (5th Cir. 1970) and *Western Union Telegraph Company v. Esteve Brothers & Co.,* 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921). These cases hold, in short, that any liability attributed to the utility is limited by the provisions of the tariffs, and that if the tariffs are unreasonable, the only attack that can be made upon them would be proceedings contesting their reasonableness before the regulatory agency having the proper jurisdiction.

Appellant then cites *Southwestern Bell Telephone Co., Inc. v. Rucker,* 537 S.W.2d 326 (Tex.Civ.App.1976, writ ref'd n. r. e.), and *Faber v. Southwestern Bell Telephone Co.,* 155 F.Supp. 162 (S.D.Tex.1957), which, in effect, affirm the law as announced in *Israel* and *Esteve Brothers,* set out above.

■ We have no quarrel with these cases; however, we note that both hold that the tariffs control unless they are unreasonable. In the case at bar we have no findings of fact or conclusions of law filed by the court, neither do we have a statement of facts. Consequently, it must be presumed that appellant damaged appellee through deceptive trade practices as recited in the judgment, and it must also be presumed that the court found the tariffs to be unreasonable. *Commercial Credit Corporation v. Smith,* 143 Tex. 612, 187 S.W.2d 363 (1945).

## III.

Finally, we come to the primary jurisdiction question. In answer thereto, appellant relies on *Carter v. American Telephone and Telegraph Co.,* 365 F.2d 486 (5th Cir. 1966). The basic holding in *Carter* is that the regulatory agency, here the Public Utility Commission, has primary jurisdiction over the case, and the case must first be tested in that regulatory authority before a tariff can be avoided.

*Carter* is very much in point with the case at bar; however, the Texas courts have taken a slightly different tack.

■ In *Foree v. Crown Central Petroleum Corporation,* 431 S.W.2d 312 (Tex.1968), the Supreme Court recognizes the doctrine of primary jurisdiction and then states several exceptions thereto. (1) Where the issue is one inherently judicial in nature (such as a suit in damages under the Deceptive Trade Practices Act), the courts are not

ousted from jurisdiction unless the legislature, by a valid statute has explicitly granted exclusive jurisdiction to the administrative body. (2) Where the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings which are essential to the granting of the relief, the doctrine does not apply.

■ In our judgment, both of these exceptions are applicable to the case before us. We have neither been shown, nor can we find any statute ousting courts of jurisdiction. Nor have we been shown how the Public Utility Commission has the authority, *under the law, to grant the relief* sought. Indeed, there is evidence in this case quite to the contrary.

In a case recently decided by the First Court of Civil Appeals in Houston, *Southwestern Bell Telephone Company v. Reeves,* 578 S.W.2d 795 (Tex.Civ.App.1979, writ ref'd n. r. e.), the court allowed a judgment for damages against the telephone company which had been found negligent in failing to properly intercept calls to an old telephone number and in failing to give callers a new office number. A jury found, among other things, that the tariff in question was unreasonable. The court held:

"While the Legislature has conferred exclusive. original jurisdiction upon the Public Utilities Commission over the business and property of all telecommunications utilities in this state for the purpose of regulating 'rates, operations, and services,' we hold that jurisdiction over this tort claim against a telephone company has not been thus removed from the courts.

'Where the claim is not for future compliance but for damages based on past acts, the exhaustion of administrative remedies doctrine may not apply. The notion is based on the absence of a statute authorizing the Public Utility Commission to fix or adjudicate claims for damages.' Kens, *Public Futility— The Status of Consumers in Light of the Public Utility Regulatory Act,* 28 Baylor L.Rev. 953 (1976)."

## IV.

■ We also hold that public utilities that commit deceptive trade practices are not exempted from the Consumer Protection Act, Tex.Bus. & Comm.Code Ann. § 17.41 *et seq.*

In our judgment Sec. 17.50(a) of the Act is broad enough to subject appellant to suit thereunder. Neither is appellant exempted from the provision of the Act under Sec. 17.49.

The restricted exemptions under this section are in sharp contrast to the broad exemptions provided by the Deceptive Trade Practices legislation that preceded the Consumer Protection Act and was set out in Article 5069–10.03 (1971), Tex.Rev. Civ.Stat.Ann. (repealed 1973). Needless to say, public utilities are not included in the exemption. Indeed, Sec. 17.43 provides that the remedies provided are in addition to any other procedures or remedies provided for in any other law; and, Sec. 17.50 provides that a consumer who prevails in a private action under this section may obtain the appointment of a receiver or the revocation of a license or certificate authorizing a person to engage in business in this state under certain conditions. However, these remedies are not available if the person is a licensee of or regulated by a State agency which has a statutory authority to revoke or suspend a license or to appoint a receiver or trustee. In our judgment the Act applies to appellant. Section 17.44 provides that the Act shall be liberally construed to protect consumers against false, misleading, and deceptive business practices.

Judgment of the trial court is in all things affirmed.

SHANNON, Justice, concurring.

I concur in the affirmance of the judgment.

The heart of the telephone company's appeal is its contention that its liability to appellee in this cause is limited by the terms of the tariff it filed with the Public Utility Commission. A copy of the tariff

was not made a part of the record of the trial on the merits. The telephone company filed no statement of facts. Without a copy of the tariff properly in the record for this Court's examination, this Court cannot dispose of the appeal on its merits.

The majority solves the telephone company's problem by judicially noticing the fact that the company filed a tariff with the Commission, and, further, by judicially noticing the contents of that tariff. In so doing, the majority abrogates the rule of law followed in Texas for at least eighty-four years, *Thompson v. San Antonio & A. P. Ry. Co.,* 11 Tex.Civ.App. 145, 32 S.W. 427 (1895, no writ), and the rule specifically followed by this Court. *Byrd v. Trevino-Bermea,* 366 S.W.2d 632 (Tex.Civ.App.1963, no writ).

In support of its holding, the majority points to the fact that the federal courts take judicial notice of tariffs in cases of this character and further that the courts of this state take judicial notice of federal rules and regulations.[1] There is a very good reason for the courts to take notice of federal rules and regulations. The reason is that Congress has specifically provided that "The contents of the Federal Register *shall* be judicially noticed . . ." (Emphasis added). 44 U.S.C.A. § 1507 (1969).

There is no similar requirement in the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a *et seq.* (Supp.1978). If the legislature had intended to change the long-standing rule, it could have done so in the Act. If the legislature wishes to abrogate that rule in the future, it may do so. In the meantime, the office of the courts is to adhere to the clearly defined law.

Because there was no statement of facts filed and because no tariff appears properly of record, this Court may not examine the telephone company's contention that its liability is limited by the provisions of the tariff.

1. The Supreme Court has written that the statement that the courts of Texas are required to take judicial notice of administrative rules and regulations adopted by all federal depart-

ments, boards, and commissions pursuant to statute is "overbroad." *Tippett v. Hart,* 501 S.W.2d 874 (Tex.1973).