FIRST STATE BANK OF LARNED, KANSAS, v. J. D. McGAUGHEY.

Decided March 18, 1905.

**1.—Assignment of Error.**

An assignment of error that "The court erred in sustaining defendant's general demurrer to plaintiff's original petition and accordingly dismissing the suit and rendering judgment in favor of defendant for costs," followed by a proposition stating merely that the petition set forth a good and valid cause of action, is not subject, it seems, to the objection that it is too general.

**2.—Same—Fundamental Error.**

It is fundamental error apparent on the face of the record to dismiss a suit on general demurrer where the petition states a good cause of action.

**3.—Fraud—Recovery of Money Paid by Bank.**

M. telegraphed to a bank asking if it would pay checks of C. drawn on it in payment for cattle, and the bank answered, "Yes." C. then drew a check in M.'s favor for a sum which was in part for payment on cattle and in part for other purposes, and the bank paid the check in ignorance of the fact that a part of the amount was not in payment for cattle. C. had no funds on deposit with the bank. Held, that the bank was entitled to recover of M. such amount paid him on the check as was not in payment for cattle, the transaction being to this extent fraudulent.

**4.—Same—Joint Wrongdoer—Demurrer.**

The fact that C. would also be liable to the bank with M. held not to alter the case; and if by reason of facts not disclosed by the petition C. was primarily or alone liable, or for any other reason the bank was not entitled

to recover, this was matter of defense such as would have to be presented in some form other than by general demurrer.

Appeal from the District Court of Jones. Tried below before Hon. H. R. Jones.

*H. S. Rogers* and *C. C. Ferrell,* for appellant.

*C. H. Steele,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—June 12, 1903, appellee sent the following telegram from Stamford, Texas, to appellant at Larned, Kansas: "Will you pay C. W. Clark's checks for cattle?" To which on the same day appellant replied by telegram: "Yes." Thereupon, June 13, 1903, C. W. Clark drew a sight draft on appellant for $8,850, payable to the order of appellee, which was paid by appellant in due course of business, appellee receiving the amount of the draft on or about the day of its date.

This suit was brought by appellant against appellee to recover $1,650 of the sum so paid, the petition alleging, "That in truth and in fact, only $7,200 of said draft given by said Clark to defendant as aforesaid, was for cattle, and the balance of said draft, to wit, $1,650, was not for cattle, but was for some other purpose unknown to plaintiff." The petition contained only the following additional allegations and prayer: "That plaintiff agreed with defendant by telegram, as is herein above set forth, to pay said C. W. Clark's checks for cattle, but plaintiff did not then agree, and plaintiff has at no time agreed with defendant to pay said Clark's checks for anything else but for cattle. That Stamford, Texas, where said draft was drawn, and Larned, Kansas, where the same was paid, as aforesaid, are several hundred miles apart, and plaintiff had no notice whatever, except defendant's said telegram, of the trade or negotiations between defendant and the said Clark, both of whom were then at Stamford, Texas. At no time, from the day it was drawn to long after it had been paid as aforesaid, did plaintiff have any notice whatever that said draft included $1,650, or any other amount, that was not for cattle, and plaintiff believed at the time it paid said draft, $8,850, as aforesaid, that the entire amount was for cattle, and that said draft had been drawn in accordance with the agreement by and between plaintiff and defendant as set forth in the telegram aforesaid. That neither at the time said draft was drawn, nor at any time since that date, did the said Clark have any funds with plaintiff, nor at said times did plaintiff owe the said Clark any amount, nor did plaintiff have any understanding or agreement with him concerning the payment of said draft. Wherefore plaintiff says that defendant is indebted to plaintiff for $1,650 had and received as aforesaid, together with interest on that amount at six percent interest from June 13, 1903, and for that amount plaintiff prays judgment, together with all costs of suit, and for such other and further relief, general and special, legal and equitable, as the facts may warrant."

. The court sustained a general demurrer to the petition and dismissed the suit, from which judgment this appeal is prosecuted.

*Conclusions of Law.*—But one assignment of error is made, and it is objected to for being too general, the assignment reading: "The court erred in sustaining defendant's general demurrer to plaintiff's original petition and accordingly dismissed the suit and rendering judgment in favor of defendant for costs." An assignment in terms quite as general, complaining of an order overruling a general demurrer, was considered sufficient in Land Company v. McClelland Brothers, 86 Texas, 192; but in Railway v. Calnon, 50 S. W. Rep., 422, in which writ of error was refused, such an assignment, "in the absence of a proposition making it more specific," was held to be "too general to demand consideration." The proposition in this instance merely states that the petition stated "a good and valid cause of action," which is about as general as the assignment. But if we were to disregard the assignment we would nevertheless have to consider the error, since it would be fundamental error apparent on the face of the record to dismiss a suit on a general demurrer where the petition states a good cause of action. A judgment thus making a final disposition of the case differs from a mere order overruling a demurrer, as in the cases cited, which still leaves the case pending before the court, without final determination of the issues involved.

Considering, then, on its merits the question raised by the appeal, and indulging every reasonable intendment in favor of the petition, we have the case of money paid A by B at the request of C in excess of the amount B had promised or was under obligations to pay, the excess having been paid by B in the mistaken belief that he had promised and was under obligation to pay the full amount, whereas A received the money knowing that B had not promised to pay the amount so received. In such case the law would imply a promise on A's part to pay the excess back to B. It is perhaps needless to say that in this illustration A represents appellee and B appellant. The draft, read in the light of the telegrams, amounted to a representation to appellant on the part of both C. W. Clark, the drawer, and appellee, in whose favor it was drawn, that the full amount of the draft was to be paid to appellee for cattle purchased by him. On the facts alleged in the petition, if the draft had not been paid, appellee could not have recovered from appellant the sum sued for in this case, and we see no good reason for denying appellant the recovery thereof after it had been paid in ignorance of the fact that the draft had been drawn for a greater sum than appellant had agreed to pay. The transaction was in a legal sense fraudulent, for, to the extent of $1,650, appellee received money to which he knew or ought to have known he was not entitled. The expression "for cattle" in the telegram was material and all important, since that alone limited the amount for which Clark was authorized to draw.

To state the case in another way, in order to make it plainer, if possible; let us suppose two drafts to have been drawn, one to pay for cattle, in the sum of $7,200, for which appellant was liable, and

the other for some other purpose, in the sum of $1,650, for which he was not liable, and both to have been paid by appellant on the representation of appellee that they had been drawn in his favor to pay for cattle sold Clark, there being nothing on the face of the drafts to show for what they had been drawn; or, what would amount to the same thing, let us suppose both drafts to have shown on their face that they had been drawn to pay for cattle; in such case it is not to be doubted that appellant would be entitled to recover the proceeds of the smaller draft so obtained by appellee. All that such a transaction would lack of being a violation of the statute against swindling would be the fraudulent intent. While one so obtaining money would not be liable to a criminal prosecution in the absence of such intent, he would nevertheless be liable in a civil action for the consequences of his false representation, however innocently made. The fact that Clark would also be liable does not alter the case. Both were prima facie and equally in the wrong, according to the allegations of the petition, in favor of which every reasonable intendment is to be indulged as against a general demurrer. Land Co. v. McClelland Bros., supra. If by reason of facts not disclosed by the petition Clark was primarily or alone liable, or for any other reason appellant was not entitled to recover herein, this was matter of defense which appellee was required to present in some form other than by general demurrer. The reasonable intendment of the petition is that the money sued for was obtained by means of a false representation on the part of appellee as well as Clark, and the general allegation in the petition of indebtedness so arising and existing at the institution of the suit was sufficient, in the absence of special exceptions.

The judgment is therefore reversed and the cause remanded for a new trial.

*Reversed and remanded.*